2026 UT App 113

# THE UTAH COURT OF APPEALS

628 PARK AVENUE LLC,
Appellant,
*v.*
ROBERT A. MILLER,
Appellee.

Opinion
No. 20240378-CA
Filed July 30, 2026

Third District Court, Silver Summit Department
The Honorable Richard E. Mrazik
No. 190500384

Troy L. Booher, LaShel Shaw, Taylor P. Webb, and
Tal S. Madanes, Attorneys for Appellant

Craig A. Hoggan and Matthew M. Kaufmann,
Attorneys for Appellee

JUDGE JOHN D. LUTHY authored this Opinion, in which
JUDGES RYAN M. HARRIS and RYAN D. TENNEY concurred.

LUTHY, Judge:

¶1 628 Park Avenue LLC (Park Avenue) leased a commercial property (the Premises) to Church LLC dba Church Public House (Church), with Robert A. Miller personally guaranteeing Church's performance under the lease. After Church failed to pay rent and other amounts it owed, Park Avenue sued Miller under the guaranty, attempting to collect Church's unpaid rent and other damages from him. Miller moved for summary judgment on—as relevant here—four issues.

¶2 First, Miller requested a ruling as a matter of law that Church had surrendered the Premises to Park Avenue and that Park Avenue had accepted the surrender. The district court

granted Miller's request, ruling as a matter of law that Park Avenue had accepted a surrender of the Premises, thereby precluding Park Avenue from claiming damages that accrued after the date of the surrender and acceptance.

¶3     Second, Miller asked the court to rule as a matter of law that the guarantee he signed did not obligate him to pay treble damages Church might owe under the unlawful detainer statute. The court granted this request as well.

¶4     Third, Miller moved for a ruling that Park Avenue had failed to adequately disclose a computation of its damages and, thus, that it should be prohibited from presenting evidence of its damages. On this issue, the court granted Miller's motion in part and denied it in part. The court determined that Park Avenue's disclosure was adequate as to the damages it claimed for unpaid rent during the five months preceding its acceptance of Church's surrender of the Premises. But the court ruled that Park Avenue's disclosure was otherwise inadequate and that Park Avenue was therefore barred from presenting evidence of other damages.

¶5     Finally, Miller moved for summary judgment on the basis that Park Avenue had received payments from Church in excess of the amount Park Avenue claimed in unpaid rent during the five months preceding its acceptance of the surrender of the Premises. The court granted this motion, ruling that the undisputed evidence showed that Park Avenue had received payments in excess of the only damages it was still permitted to pursue and, thus, that Park Avenue could not maintain a claim against Miller. The court then dismissed Park Avenue's action against Miller.

¶6     Park Avenue appeals. It argues that there remain genuine disputes of material fact on the issues of surrender and acceptance and of Miller's obligation to pay treble damages and, therefore, that summary judgment was inappropriate on these issues. This argument is well taken, and we reverse the grant of summary judgment on these issues. Park Avenue also argues that its

damages disclosure was adequate and, accordingly, that the court's summary judgment rulings related thereto were in error. We are not persuaded that Park Avenue's overall damages disclosure was adequate. Hence, we affirm in part the district court's rulings related to Park Avenue's damages disclosure. However, we determine that certain components of Park Avenue's disclosure were adequate. Thus, we reverse in part the summary judgment related to Park Avenue's damages disclosure and hold that to the extent Park Avenue is otherwise permitted to pursue its claims related to those components of its claimed damages, it may present evidence of the amount of those damages. Finally, because we determine that Park Avenue may present evidence of amounts allegedly owed by Church in addition to unpaid rent during the five months preceding Church's purported surrender of the Premises, we reverse the district court's final summary judgment ruling and ultimate dismissal of Park Avenue's action. We remand this case for further proceedings consistent with this opinion.

BACKGROUND[1]

*The Lease*

¶7     Park Avenue owns the Premises, which are located at 628 Park Avenue in Park City. At the time of the events giving rise to this case, the Premises had previously "been used as a restaurant and bar," and Church desired to lease and use the Premises for that same purpose. Miller was a "passive investor" in Church and apparently had no significant involvement in its management.

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *M.A. v. Regence BlueCross BlueShield of Utah*, 2020 UT App 177, n.1, 479 P.3d 1152 (cleaned up).

¶8 In November 2016, Church and Park Avenue entered a lease agreement (the Lease). Under the Lease, Church agreed to rent the Premises from November 1, 2016, through October 31, 2021, "or such earlier date on which [the] Lease [might be] terminated pursuant to any of the terms, conditions or covenants of [the] Lease or pursuant to law." The Lease required a security deposit of $60,000. The minimum annual rent was $360,000 (or $30,000 per month), together with taxes, an annual inflation increase, and a portion of Church's gross annual proceeds over $3.6 million.

¶9 The Lease defined the failure to timely pay rent as a breach and default. If Church defaulted, Park Avenue was entitled to various remedies, including termination of the Lease "by written notice." Section 14.03 of the Lease provided that if Church breached the Lease or if Park Avenue terminated the Lease for any breach, or otherwise took action on account of Church's breach or default under the Lease, then "in addition to any other remedies" Park Avenue might have in the event of a breach or default, Park Avenue could "recover from [Church] all damages incurred by reason of such breach or default, including all of the following":

> (a) The worth at the time of award of any unpaid Rent that was due and payable for periods prior to and at the time of such termination;
>
> (b) The worth at the time of award of the amount by which the unpaid Rent (other than Percentage Rent) that would have been earned after termination until the time of award exceeds the amount of such Rent loss [Church] proves could have been reasonably avoided and any savings [Church] proves [Park Avenue] realized as a result of [Church's] breach or default;
>
> (c) The worth at the time of award of the amount by which the unpaid Rent (other than Percentage Rent)

for the balance of the Lease Term after the time of award exceeds the amount of such Rent loss that [Church] proves could be reasonably avoided and any savings [Church] proves [Park Avenue] realized as a result of [Church's] breach or default;

(d) Any other amount necessary to compensate [Park Avenue] for [Church's] failure to perform its obligations under [the] Lease, including, without limitation, any costs or expense incurred by [Park Avenue] in: (i) retaking possession of the Premises, including reasonable attorneys' fees therefor; (ii) maintaining or preserving the Premises after such default; (iii) preparing the Premises for reletting to a new tenant, including repairs or alterations to the Premises for such reletting; (iv) leasing commissions; and (v) any other costs necessary or appropriate to relet the Premises LESS any savings [Church] proves [Park Avenue] realized as a result of [Church's] breach or default;

(e) At [Park Avenue's] election, such other amounts in addition to or in lieu of the foregoing as may be permitted from time to time by the laws of the State where the Premises [are] located.

¶10 Under the Lease, interest accrued on any past due amounts at 18% per annum compounded monthly, and Park Avenue was entitled to recover attorney fees incurred in any successful action against Church "relating to the provisions of [the] Lease or any default [there]under beyond any applicable notice and cure periods." The Lease also provided that if Church were in default, "all payments made by [Church] and received by [Park Avenue]" could "be applied, in [Park Avenue's] sole and absolute discretion, to any outstanding arrearages owed by [Church] to [Park Avenue], irrespective of any payment characterization [Church might] designate for any such payment."

*The Guaranty*

¶11    Prior to execution of the Lease by Church and Park Avenue, Miller signed a lease guaranty (the Guaranty). By signing the Guaranty, Miller guaranteed "the payment of . . . any losses, damages, or liabilities of any kind or nature incurred by [Park Avenue] as a result of [Church's] . . . . failure to perform any term, provision, obligation or requirement of the Lease," as well as "the payment of all costs, attorney fees, and other expenses that [might] be incurred by [Park Avenue] in enforcing" Church's performance under the Lease. The Guaranty was included as an attachment to the Lease.

*Church's Default and the Forbearance Agreement*

¶12    In April and May 2017, Church failed to make timely rent payments. Park Avenue served Church with a three-day notice to pay or quit. When Church failed to come current on its rent, Park Avenue sued for unlawful detainer. Church and Park Avenue then entered into a forbearance agreement (the Forbearance Agreement) that was effective June 2, 2017. The Forbearance Agreement required Park Avenue to refrain from taking further action in the lawsuit. In return, Church acknowledged that it had fallen behind on its rent payments, and it agreed to make a series of monthly installment payments—beginning in June 2017 and running through July 2018—to cover the amounts the parties agreed Church owed under the Lease.

¶13    The Forbearance Agreement stated that the Lease would "remain in full force and effect" and that "nothing in [the Forbearance Agreement] replace[d], supersede[d] or cancel[ed] any term, condition or obligation contained in the Lease." Under the Forbearance Agreement, Church agreed that its "failure to make any single installment payment" would constitute "a breach of [the] entire" Forbearance Agreement and that upon such a breach, the total amount of the installment payments would become due and Park Avenue could continue its suit against

Church. Section 4(c) of the Forbearance Agreement provided that if Church failed "to make any single installment payment," then the "[t]reble damages described in [Utah Code section] 78B-6-811(3), including but not limited to treble rent payments and other payments due under the [Lease], [would] begin to accrue on the date of any such breach and [would] continue until [Church] vacate[d] the [P]remises."

*The Return of Possession and the License Agreement*

¶14    In July 2017, Church again failed to pay rent. It also fell behind on the payments it owed under the Forbearance Agreement. Accordingly, Park Avenue served Church with another three-day notice to pay or quit, and it amended its complaint to update its unlawful detainer cause of action and add a claim for breach of the Forbearance Agreement. Church then also missed its August 2017 rent payment. On August 9, 2017, the court entered an order of restitution requiring Church to vacate the Premises within three days.

¶15    Over the next few days, Church and Park Avenue exchanged emails, trying to find a "resolution" agreeable to both parties. On August 12, 2017, Park Avenue wrote that it was "amenable" to "Church relinquish[ing] possession of the [P]remises" but receiving a "license" to use the Premises for several days in exchange for a cash payment of $35,000. Park Avenue's email also discussed the possibility of "reviv[ing] the [L]ease" and listed some additional terms that would need to be included in "[t]he revived lease."

¶16    Later in the day on August 12, 2017, Church signed a return of possession (the Return of Possession), under which it "COMPLETELY RETURN[ED] POSSESSION OF THE PREMISES" to Park Avenue. The Return of Possession stated that Church understood that Park Avenue was "not waiv[ing] any rights or remedies afforded to [Park Avenue] under the Lease . . . [or] under any applicable Federal, State and/or Local law" and

that Church's "return of possession [did] not relieve [Church] of any outstanding obligations under the Lease."

¶17    Also on August 12, 2017, Church and Park Avenue executed a temporary license (the License Agreement). The License Agreement stated that

- as a tenant, Church had "failed to pay rent, was in unlawful detainer and was evicted from the [Premises]";

- Church "expressly acknowledge[d], admit[ted] and agree[d]" that absent the License Agreement, it had "no interest in or right to enter or use [the Premises]";

- Church owed Park Avenue "past due payments arising out of a forbearance agreement, the terminated lease agreement, and the unlawful detainer action";

- Church "desire[d] to use the [Premises] while it attempt[ed] to raise funds to pay [the] money [it] owed to [Park Avenue]";

- Park Avenue "refuse[d] to enter a lease agreement with" Church, and Church "under[stood] and agree[d] that [the License Agreement] in no way create[d] a lease agreement";

- the License Agreement "in no way alter[ed] or amend[ed] any obligation owed by [Church] to [Park Avenue] under the previously existing and now terminated lease agreement"; and

- the License Agreement gave Church a "[l]icense" to continue using the Premises through August 18, 2017, in exchange for a cash payment of $35,000.

¶18   Park Avenue never served Church with written notice stating that it was terminating the Lease. In a written declaration, Park Avenue's manager later stated that Park Avenue "never intended the Return of Possession . . . or the [License Agreement] to be a surrender of the Lease" and "never intended to accept the surrender of the Lease." He averred that Park Avenue "requested a return of the Premises only, not a surrender of the [L]ease itself." He stated that Park Avenue "thought the [o]rder of [r]estituion issued on August 9, 2017[,] ordering Church to vacate the Premises for failure to pay rent terminated the Lease." He also said, "[Park Avenue] considered the Lease suspended during the licensing period and would [have] revive[d] it if Church met its obligations."

¶19   Church was not successful in meeting its obligations to Park Avenue, and it eventually vacated the Premises. Park Avenue was thereafter able to rent the Premises for two events, but the Premises otherwise remained vacant for the remaining term of the Lease.

*Park Avenue's Lawsuit Against Miller and Damages Disclosure*

¶20   In August 2019, Park Avenue sued Miller, seeking to enforce the Guaranty and obtain $2,043,978.26 in damages. In its initial disclosures, Park Avenue provided the following statement regarding its claimed damages:

> [Park Avenue] seeks damages for amounts due and owing pursuant to the [Guaranty]. [Park Avenue's] damages amount of $2,043,978.26 ("[Park Avenue's] Damages") is based on the amount [Church] owes [Park Avenue] arising out of [Church's] repeated failure to pay rent.
>
> [Park Avenue's] Damages amount consists of unpaid rent, statutory damages for unlawful

detainer, and breach of contract damages plus interest, attorney fees, and court costs.

[Park Avenue's] Damages amount was computed pursuant to Section 14.03 of the [Lease], pursuant to the [F]orbearance [A]greement (including Section 4(c)) . . . , and pursuant to [Utah Code section] 78B-6-811(3).

A copy of [Park Avenue's amended complaint against Church] with all damages claimed by [Park Avenue] against [Church], the [Lease], the [F]orbearance [A]greement, and the [Guaranty] are all attached hereto. As for additional amounts, [Park Avenue] reserves the right to supplement this disclosure as additional information becomes known.

As it indicated, Park Avenue attached to its initial disclosures a copy of its amended complaint against Church, the Lease, the Guaranty, and the Forbearance Agreement.

¶21 Park Avenue's amended complaint against Church had sought unlawful detainer damages for breach of the Lease as follows:

a. Except for May . . . 2017 and June . . . 2017 rent, any rent due and unpaid by [Church] through the end of the [Lease], including any fees, rent payment, and additional rent that comes due while [Church] remains in unlawful detainer (such as August . . . 2017 rent);

b. damages caused because [Church] remained in possession of [the Premises];

> c. physical damages beyond normal wear and tear (waste) caused by [Church] to [the Premises] during the time [Church was] in possession of the [Premises]; and
>
> d. damages for the abatement (termination) of any nuisance caused by [Church] as provided in [Utah Code sections] 78B-6-1107 through 1114.

Park Avenue's amended complaint against Church had also sought attorney fees, costs, and "treble damages in accordance with [Utah Code section] 78B-6-811 at the rate of $3,000 for each day [Church] remained in unlawful detainer prior to executing the Forbearance Agreement, beginning on May 15, 2017[,] until June 2, 2017, and for each day [Church] remain[ed] in unlawful detainer, beginning on July 13, 2017."

¶22 As for its claim against Church for breach of the Forbearance Agreement, Park Avenue's amended complaint against Church had alleged that $73,354.91 was due under the Forbearance Agreement as of July 3, 2017; that on July 13, 2017, Church made a payment of $33,267.48; that on July 14, 2017, Church made a payment of $4,604.52; and, thus, that "$35,482.91 remain[ed] due and owing" under the Forbearance Agreement. Accordingly, for breach of the Forbearance Agreement, Park Avenue's amended complaint against Church had sought damages of $35,482.91. It had also sought—for breach of the Forbearance Agreement—attorney fees, costs, and treble damages under Section 4(c) of the Forbearance Agreement and section 78B-6-811(3) of the Utah Code "in the amount of $3,000 for each day [Church] remain[ed] in possession of the [P]remises beginning July 4, 2017."

¶23 In sum, Park Avenue's initial disclosures in its lawsuit against Miller—the case from which this appeal arises—indicated that Park Avenue sought from Miller all of the damages Park Avenue had claimed in its earlier lawsuit against Church.

*Miller's Summary Judgment Motions*

¶24    Following discovery in this case, Miller filed a motion for summary judgment, asking the court to rule as a matter of law that (1) Park Avenue accepted a surrender of the Premises on August 12, 2017, and was thus "barred from recovering any amount that was not already due by" that date; (2) "Miller did not agree to pay treble damages under Utah's unlawful detainer statute," so Park Avenue's "damage claims against Miller based on unlawful detainer fail[ed]"; and (3) Park Avenue did not comply with its "obligation to provide a damages computation" under rule 26(a)(1)(C) of the Utah Rules of Civil Procedure and should therefore be precluded from offering evidence of its damages.

¶25    The district court granted Miller's motion in part and denied it in part. First, the court ruled as a matter of law that Park Avenue accepted a surrender of the Premises on August 12, 2017, and that to the extent Park Avenue sought damages that accrued after that date, Park Avenue's claim was dismissed with prejudice. In support of this ruling, the court pointed to the Return of Possession generally and the following specific statements in the License Agreement:

- "[Church] owes [Park Avenue] past due payments arising out of . . . the terminated lease agreement,"

- "[Park Avenue] refuses to enter a lease agreement with [Church],"

- "[Church] understands and agrees that [the License Agreement] in no way creates a lease agreement,"

- "[Church] expressly acknowledges, admits and agrees [that] . . . [a]bsent the [License Agreement], [it] has no interest in or right to enter or use [the Premises]," and

- "[The License Agreement] in no way alters or amends any obligation owed by [Church] to [Park Avenue] under the previously existing and now terminated lease agreement."

In further support of its ruling, the court stated that it was "undisputed that the parties corresponded in writing about a resolution regarding relinquishing possession of the [Premises] and reviving the [L]ease with new and additional terms." In short, the court concluded that "the Return of Possession and the subsequent [License Agreement] constitute[d] a surrender and acceptance under the Utah Supreme Court's decision in *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896 (Utah 1989)."

¶26 Second, the court ruled as a matter of law that under the plain language of the Guaranty, Miller was "not liable for any treble damages that [might] be awarded to [Park Avenue] against [Church] under the Lease." The court noted that Miller had guaranteed to Park Avenue the payment of "losses, damages, or liabilities of any kind or nature *incurred* by [Park Avenue] as a result of" Church's breach. (Emphasis added.) It then reasoned that statutory treble damages are not "'losses, damages, or liability' that are '*incurred*'" but are, rather, "statutory damage[s] awarded against a holdover tenant to provide an economic incentive for the tenant to leave the property and return possession to the landlord." (Emphasis added.) The court concluded that because the statutory treble damages that could have been assessed against Church were not damages incurred by Park Avenue, those damages were "not properly subject to the Guaranty."

¶27 Finally, the court determined that Park Avenue had not "provide[d] a sufficient computation" in its damages disclosure "because it provided a bare number ($2,043,978.26) while referring to multiple documents and damages theories" and leaving many questions unanswered. Specifically, the court said,

> [Park Avenue] did not explain whether it was calculating damages under subsections 14.03(a), (b), (c), or (d) of the Lease or a combination of those subsections, and, if it was, [Park Avenue] did not explain what figures it was deriving from its application of those subsections. [Park Avenue] did not state the number of days of unlawful detainer, confirm the total amount of treble damages claimed, or state whether it was applying the trebling provision of the unlawful detainer statutes to any amounts in addition to daily rent. [Park Avenue] did not identify the missed payments under the Forbearance Agreement and the amount of those missed payments. [Park Avenue] did not explain how it was applying payments that may have been made by [Church] or payments that may have been received from third parties, such as other tenants. [Park Avenue] did not explain how any amounts due and owing under the Forbearance Agreement affected, overlapped, or superseded any amounts owing under the Lease for the months of April, May, June, July, and August of 2017. This failure to provide information regarding these issues constitutes a failure to provide a computation of damages.

The court then determined that the deficient disclosure was not harmless or the result of good cause and, thus, that Park Avenue was generally barred from putting on evidence of its damages. Nevertheless, the court ruled that Park Avenue was "not barred from presenting evidence supporting its claimed breach of contract damages for unpaid rent for April, May, June, July, and August of 2017." As to this ruling, the court explained, "[I]t was readily apparent that [Park Avenue] was claiming unpaid rent for those months, and these amounts are readily ascertainable from

the face of the Lease, which was referenced in the initial disclosures."

¶28    Later, Miller filed another summary judgment motion. In this motion, he noted that in the court's prior summary judgment order, the court had "held that the Lease was rescinded and terminated under the doctrine of surrender and acceptance and, therefore, . . . that 'to the extent [Park Avenue sought] damages from [Miller] for rent payments after August 12, 2017, . . . the claim [was] dismissed with prejudice.'" He further observed that the court had "ruled that '[Park Avenue was] barred from presenting any evidence of damages except for evidence of unpaid rent for the months of April, May, June, July, and August of 2017.'" Based on those rulings, Miller asserted that to establish "any liability against [Miller] based on the Guaranty," Park Avenue had to "prove that Church owe[d] rent under the Lease for those five months," and he argued that Park Avenue could not "meet this burden because Church actually paid [Park Avenue] nearly $45,000 more than" the amount Church owed for those five months. According to Miller, the undisputed facts showed that while Church owed Park Avenue $150,000 in unpaid rent for the five months from April to August 2017, Church had made "six payments to [Park Avenue] totaling $194,605.48," namely,

1.  $60,000 on or about September 21, 2016, as a security deposit;

2.  $30,000 on June 9, 2017;

3.  $31,733.48 on June 12, 2017;

4.  $33,267.48 on July 13, 2017;

5.  $4,604.52 on July 14, 2017; and

6.  $35,000 on or about August 14, 2017.

Miller contended that because Church had paid Park Avenue more than the amount of damages Park Avenue had admissible evidence to support, the court should enter summary judgment on the "entirety" of Park Avenue's claim against him and award him his attorney fees as the prevailing party.

¶29 The court agreed with Miller. It stated that "the undisputed evidentiary record" showed that Park Avenue could "only show admissible evidence of $150,000 owing under the Lease and/or [the] Forbearance Agreement" and that Church had "paid over $155,000" to Park Avenue. The court therefore determined that there was no genuine dispute that Park Avenue could not "show any triggering of the Guaranty." Thus, the court dismissed Park Avenue's claim against Miller and awarded him his reasonable attorney fees and costs.

## ISSUES AND STANDARDS OF REVIEW

¶30 Park Avenue now appeals, challenging each of the district court's summary judgment rulings described above. "Appellate courts review a district court's legal conclusions and ultimate grant or denial of summary judgment for correctness, viewing the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Fleming v. Dullanty*, 2025 UT App 128, ¶ 28, 579 P.3d 365 (cleaned up). To the extent that the court's summary judgment rulings rely on the interpretation of a contract, "the determination of whether a contract is facially ambiguous is a question of law, which we review for correctness," *KB Squared LLC v. Memorial Bldg. LLC*, 2019 UT App 61, ¶ 17, 442 P.3d 1168 (cleaned up), and the "interpretation of unambiguous contracts is also a question of law," which we review for correctness, *Ward v. IHC Health Services, Inc.*, 2007 UT App 362, ¶ 7, 173 P.3d 186. To the extent that the court's summary judgment rulings relied on its imposition of discovery sanctions under rule 26 of the Utah Rules of Civil Procedure, we review for abuse of discretion a district court's determination regarding the

sufficiency of a disclosure, *see Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha Int'l LLC,* 2020 UT App 122, ¶ 37, 473 P.3d 624, and we also "review a district court's ruling on sanctions under rule 26 of the Utah Rules of Civil Procedure using an abuse of discretion standard." *Cougar Canyon Loan LLC v. Walker,* 2020 UT App 176, ¶ 14, 482 P.3d 227.

## ANALYSIS

## I. Surrender and Acceptance

¶31    Park Avenue contends that the district court erred by concluding as a matter of law that Church surrendered the Premises and Park Avenue accepted the surrender.

¶32    Surrender and acceptance is a common law doctrine. *See Reid v. Mutual of Omaha Ins. Co.,* 776 P.2d 896, 900 (Utah 1989). "Under that doctrine, when a tenant surrenders the premises to a landlord before a lease term expires and the landlord accepts that surrender, the tenant is no longer in privity of estate with the landlord and therefore has no obligation to pay any rents accruing after the date of the acceptance." *Id.* "Phrased in contract law parlance, the lease is treated as having been rescinded or terminated by mutual agreement." *Id.* "[T]he critical issue in applying the doctrine . . . is determining whether the landlord intended to accept the surrender. This intention may be express or implied." *Id.* It may be implied if it is "manifested by [the parties'] acts." *Brookside Mobile Home Park, Ltd. v. Peebles,* 2000 UT App 314, ¶ 20, 14 P.3d 105 (cleaned up), *aff'd,* 2002 UT 48, 48 P.3d 968.

¶33    "The party who relies on [surrender and acceptance] has the burden of proving it," and "the proof must be clear where the surrender is to be inferred from circumstances inconsistent with the intention to perform." *Id.* ¶ 21 (cleaned up). "[A]cceptance of the keys and attempting to re-let the premises are not alone

sufficient to constitute a surrender and acceptance," but "[s]uch acts may of course be considered with other circumstances." *John C. Cutler Ass'n v. De Jay Stores*, 279 P.2d 700, 702 (Utah 1955). Given the "fact-intensive nature" of the inquiry, the "question of whether the acts and circumstances constituted a surrender and acceptance is one for the fact finder." *Brookside*, 2000 UT App 314, ¶¶ 21, 24 (cleaned up). And because this is an issue of fact, "summary judgment should be granted with great caution." *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 64, 424 P.3d 970 (cleaned up). Indeed, summary judgment should not be granted on a factual issue unless the evidence "is so one-sided that a reasonable factfinder could reach but one conclusion." *Ocean 18 LLC v. Overage Refund Specialists LLC* (*In re Excess Proceeds from Foreclosure of 1107 Snowberry St.*), 2020 UT App 54, ¶ 29, 474 P.3d 481.

¶34    Here, the district court determined that the Return of Possession together with several specific provisions of the License Agreement and correspondence between the parties collectively supported the conclusion that as a matter of law Church surrendered the Premises on August 12, 2017, and Park Avenue accepted the surrender. And indeed, there is language in those sources that suggests a surrender and acceptance. In the Return of Possession, Church said that it was "COMPLETELY RETURN[ING] POSSESSION OF THE PREMISES" to Park Avenue. In the License Agreement, the parties repeatedly referred to the Lease as having been "terminated" and said that the License Agreement "in no way create[d] a lease agreement" because at that point, Park Avenue "refuse[d] to enter a lease agreement" with Church. Instead, the License Agreement purported to create only a "[l]icense," and Church "expressly acknowledge[d], admit[ted] and agree[d]" that absent the License Agreement, it had "no interest in or right to enter or use [the Premises]." Moreover, in a nearly contemporaneous email, Park Avenue referred to "reviv[ing] the [L]ease," from which a factfinder might infer that Park Avenue understood the Lease to have been terminated. *See Revive*, Merriam-Webster, https://www.merriam-

webster.com/dictionary/revive [https://perma.cc/H7GA-JZAM] (defining "revive" to include "restor[ing] to . . . life").

¶35 However, other language from these same sources suggests that Park Avenue and Church did not intend a surrender and acceptance. The Return of Possession stated that Park Avenue was "not waiv[ing] any rights or remedies afforded to [Park Avenue] under the Lease" and that Church's "return of possession [did] not relieve [Church] of any outstanding obligations under the Lease." The License Agreement similarly stated that it "in no way alter[ed] or amend[ed] any obligation owed by [Church] to [Park Avenue] under the" Lease. And Park Avenue's email reference to "reviv[ing] the lease" could also support an inference that the parties viewed the Lease as not having been terminated but only having been rendered dormant while Church attempted to "raise funds to pay [the] money [it] owed to [Park Avenue]." *See id.* (defining "revive" to include "restor[ing] to consciousness . . . or healthy condition"). Additionally, Park Avenue never served Church with written notice stating that it was terminating the Lease, and its manager declared that Park Avenue "never intended the Return of Possession . . . or the [License Agreement] to be a surrender of the Lease" and "never intended to accept the surrender of the Lease." The manager further declared that Park Avenue considered the Lease to be merely "suspended during the licensing period."

¶36 Given the conflicting evidence on this issue, a reasonable factfinder could resolve this issue in favor of either party, and because the evidence is not "so one-sided that a reasonable factfinder could reach but one conclusion," *Ocean 18*, 2020 UT App 54, ¶ 29, the district court erred in concluding as a matter of law that Church surrendered the Premises and that Park Avenue accepted that surrender.

¶37 Miller resists this conclusion primarily by pointing to the evidence we have identified that supports a finding in his favor. But the fact that evidence exists to support a finding in his favor

does not make summary judgment appropriate where there is also evidence to support a contrary finding. *See Bridge v. Backman*, 353 P.2d 909, 910 (Utah 1960) ("[U]nless there is a showing that the disfavored parties cannot produce evidence which would reasonably support a finding in their favor on a material or determinative issue of fact, a summary judgment is erroneous.").

¶38    Miller also asserts that the declaration of Park Avenue's manager cannot create a genuine issue of fact regarding Park Avenue's intent to accept a surrender of the Premises because the declaration lacks "the detail necessary to create a dispute of fact." *See generally Heslop v. Bear River Mutual Ins. Co.*, 2017 UT 5, ¶ 23, 390 P.3d 314 (stating that an "affidavit must set forth specific facts showing there is a genuine issue for trial" and that the "mere assertion that an issue of fact exists without a proper evidentiary foundation to support that assertion is insufficient" (cleaned up)). But because there is evidence in addition to Park Avenue's manager's declaration to support a finding in Park Avenue's favor, this assertion is unavailing. Moreover, even if the existence of a genuine issue of material fact depended on the manager's declaration, that declaration contained more than a mere assertion regarding Park Avenue's intent. It included sufficient information regarding the manager's role in communicating with Miller on behalf of Park Avenue to provide a foundation for the manager's statements.

¶39    In short, Miller's arguments do not persuade us that summary judgment was properly granted on the issue of surrender and acceptance, and we reverse that summary judgment ruling.

## II. Miller's Responsibility for Treble Damages

¶40    Park Avenue also asserts that the district court erred by concluding as a matter of law that Miller did not guarantee the payment of treble damages that could be imposed against Church under the unlawful detainer statute. We conclude that a genuine

dispute of material fact exists on this issue as well and, thus, that the court again erred in granting summary judgment.

¶41 Utah's unlawful detainer statute states that in the event the court or a jury finds there has been an unlawful detainer, "[t]he court shall enter the judgment against the defendant for the rent and for three times the amount of the damages." Utah Code § 78B-6-811(3). The district court determined that the Guaranty did not require Miller to pay the treble damages that could have been assessed against Church under this statute. It reasoned that Miller was obligated to pay only for "losses, damages, or liabilities of any kind or nature *incurred* by [Park Avenue] as a result of [Church's] breach of the Lease" and that "treble damages are not 'losses, damages, or liabilities' that are '*incurred*.'" (Emphasis added.) "Rather," the court said, "they are a statutory damage awarded against a holdover tenant to provide an economic incentive for the tenant to leave the property and return possession to the landlord."

¶42 The court's ruling finds some support from a plain meaning perspective. As relevant here, "incur" may be defined as "[t]o suffer." *Incur*, Black's Law Dictionary (12th ed. 2024). And plainly, Park Avenue did not suffer three times its actual damages. Hence, the court's interpretation of the Guaranty is a reasonable one.

¶43 However, the Lease employs a usage of "incurred" that is potentially different from its ordinary meaning. Specifically, the Lease says that the damages Park Avenue may recover include those "*incurred* by reason of [Church's] breach or default, including all of the following: . . . such . . . amounts . . . as may be permitted from time to time by the laws of the State [of Utah]." Under this usage, treble damages permitted by Utah's unlawful detainer statute qualify as damages "incurred" by Park Avenue "by reason of [Church's] breach." And because the Guaranty was executed in conjunction with the Lease and was included as an attachment to the Lease, it would be reasonable to interpret the

Guaranty's use of "incurred" in harmony with the Lease's use of "incurred." *See Winegar v. Froerer Corp.*, 813 P.2d 104, 109 (Utah 1991) (holding that when two agreements are "executed substantially contemporaneously and are clearly interrelated, we must construe them as a whole and harmonize their meanings if possible" (cleaned up)). Not surprisingly, Park Avenue urges this interpretation.

¶44 Having determined that the term "incurred" as used in the Guaranty is subject to two reasonable interpretations, we conclude that the Guaranty is ambiguous as to whether it obligates Miller to pay Park Avenue for treble damages that could have been assessed against Church. *See Brady v. Park*, 2019 UT 16, ¶ 54, 445 P.3d 395 ("A contractual term or provision is ambiguous if it is capable of more than one reasonable interpretation because of uncertain meaning of terms . . . ." (cleaned up)). And because the Guaranty is ambiguous on this point, the district court erred in ruling on its meaning as a matter of law. *See id.* ¶ 53 ("[W]here a contractual term or provision is ambiguous as to what the parties intended, the question becomes a question of fact to be determined by the fact-finder."). We therefore reverse the court's ruling granting summary judgment on this issue.

### III. Park Avenue's Disclosure of Its Damages

¶45 Finally, Park Avenue argues that the district court committed two errors related to Park Avenue's disclosure of its damages computation. First, it contends that the "district court incorrectly excluded evidence of [Park Avenue's] damages on the theory that [Park Avenue's] disclosure of its damages computation was insufficient under rule 26" of the Utah Rules of Civil Procedure. Second, Park Avenue asserts that the court "compounded" its initial error by "incorrectly appl[ying] rule 26(a)(1)'s [damages] disclosure requirement not only to Park Avenue's damages claim against Miller, but also to bar [Park Avenue] from showing the amounts owed by Church in response to Miller's arguments that the payments [Park Avenue] received

from Church had made it whole." We address each of these contentions in turn, after providing a brief overview of the governing law.

A.    Overview of the Governing Law

¶46    "Rule 26 of the Utah Rules of Civil Procedure requires litigants to make initial disclosures of certain fact witnesses, documents, and other information." *Black Diamond Fin. LLC v. Big Cottonwood Pine Tree Water Co.*, 2020 UT App 90, ¶ 20, 470 P.3d 445 (cleaned up). The required disclosures include "a computation of any damages claimed and a copy of all discoverable documents or evidentiary material on which such computation is based." Utah R. Civ. P. 26(a)(1)(C). "These required initial damages disclosures need not, in every case, contain a to-the-penny calculation . . . ." *Butler v. Mediaport Ent. Inc.*, 2022 UT App 37, ¶ 20, 508 P.3d 619. "Sometimes, litigants might not know, at the outset of the case, the precise amount of damages they intend to seek at trial, and may need to fine-tune their damages claims through discovery or the assistance of an expert." *Chard v. Chard*, 2019 UT App 209, ¶ 41, 456 P.3d 776. "But litigants must make a good faith attempt to compute damages to the extent it is possible to do so and must in any event provide all discoverable information on the subject, including materials related to the nature and extent of the damages." *Id.* (cleaned up). "At a minimum," the rule requires "a disclosure that damages are in fact being claimed, the categories of any such damages, and a description of the method by which the party intends to compute those damages." *Butler*, 2022 UT App 37, ¶ 22 (cleaned up). "[A]ny ability on the part of [one party] to guess at potential damages does not free [the opposing party] from its obligation to disclose a computation of damages." *Keystone Ins. Agency v. Inside Ins.*, 2019 UT 20, ¶ 20, 445 P.3d 434. If a party fails to disclose as required, "that party may not use the undisclosed witness, document, or material at any hearing or trial unless the failure is harmless or the party shows good cause for the failure." Utah R. Civ. P. 26(d)(4).

B.     Park Avenue's Damages Disclosure

¶47     Here, Park Avenue's damages disclosure stated that Park Avenue was seeking $2,043,978.26 in damages. However, despite the fact that this number—which was delineated down to the penny—was plainly the product of an actual computation, Park Avenue did not disclose the computation it employed. Park Avenue's failure to provide the computation it used to arrive at a specific amount of claimed damages was a violation of rule 26(a)(1)(C). The notion that parties "must make a good faith attempt to compute damages to the extent it is possible to do so," *Chard*, 2019 UT App 209, ¶ 41 (cleaned up), would have little meaning if parties were not required to produce their resulting good-faith computations. While our case law allows for leniency when a party lacks the components needed to perform its ultimate computation, *see Butler*, 2022 UT App 37, ¶ 20, and while it allows parties to "fine-tune" their damages claims as litigation progresses, *see Chard*, 2019 UT App 209, ¶ 41, it does not allow a party to withhold the calculation that the party actually employed to arrive at a specific number for disclosure.

¶48     Park Avenue contends that its disclosure was adequate because in addition to providing a "sum certain: $2,043,978.26," it "explained the formula for computing this figure." Specifically, it asserts that the formula consists of its statements in its damages disclosure that the $2,043,978.26 figure "'is based on the amount [Church] owes [Park Avenue] arising out of [Church's] repeated failure to pay rent[,]' consisting of 'unpaid rent, statutory damages for unlawful detainer, and breach of contract damages plus interest, attorney fees, and court costs.'" Park Avenue then suggests that it disclosed the information needed to employ that formula when it (1) identified Section 14.03 of the Lease, the Forbearance Agreement (including Section 4(c)), and Utah Code section 78B-6-811(3) as the sources "pursuant to" which its damages "amount was computed" and (2) "incorporated [the Lease, the Guaranty, the Forbearance Agreement, and its amended complaint against Church] into its initial disclosures."

¶49　But the foregoing formula and identified sources combined do not yield a computation that readily produces $2,043,978.26 in total damages. In fact, even on appeal, Park Avenue makes no effort to show how its formula produced the specific figure of $2,043,978.26. Even though some components of this figure are plainly discernable from Park Avenue's disclosure, *see infra* ¶¶ 60–64, others plainly are not. As the district court aptly noted, Park Avenue's disclosure—even when read to include the Lease and other documents incorporated therein—did not "state whether [Park Avenue] was applying the trebling provision of the unlawful detainer statutes to any amounts in addition to daily rent" or "explain how it was applying payments that may have been made by [Church] or payments that may have been received from third parties." Nor did Park Avenue's disclosure state, for example, whether its total damages figure included amounts for waste and nuisance abatement (both of which were pleaded in the amended complaint against Church) or whether it included interest, attorney fees, or amounts expended in efforts to relet the Premises. For these reasons, we are not persuaded by Park Avenue's purported "formula" for computing a damages figure of $2,043,978.26. We therefore conclude that Park Avenue's disclosure of $2,043,978.26 in damages generally did not comply with the requirements of rule 26(a)(1)(C).

¶50　Notwithstanding our foregoing conclusion, we also determine that the principles that animated our decisions in *Williams v. Anderson*, 2017 UT App 91, 400 P.3d 1071, and *Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha International LLC*, 2020 UT App 122, 473 P.3d 624, apply here and require an additional conclusion: namely, that four individual components of Park Avenue's claimed damages—the amounts that are apparent from its initial disclosures—did satisfy rule 26(a)(1)(C) and, thus, that Park Avenue is not barred from presenting evidence of those particular components of its claimed damages.

¶51　In *Williams*, the plaintiff alleged that he had held a 30% ownership interest in a company of which the two individual

defendants had also been owners. 2017 UT App 91, ¶ 2. The plaintiff further alleged that the other owners "unjustly cancelled or terminated his ownership interest and thereafter sold the company" to another entity. *Id.* The purchase price was $200,000, a fact the plaintiff did not learn until sometime during discovery. *See id.* ¶ 5.

¶52 The plaintiff sued the other owners for breach of fiduciary duty, civil conspiracy, and fraud. *Id.* ¶ 3. "In connection with his claims, [the plaintiff] sought to recover 30% of the purchase price that [the purchasing entity] paid for [the company]," "punitive and other damages," and a declaration "that he was a thirty percent (30%) owner of any equity or ownership interest that [the individual defendants] possess[ed] in [the purchasing entity]." *Id.* (cleaned up). In his initial disclosures, the plaintiff stated "that he was entitled to 30% of [the company's] purchase price and 30% of any equity or ownership interest that [the defendants] may have [had] in [the purchasing entity], including punitive damages and any money owed by [the purchasing entity]." *Id.* ¶ 7 (cleaned up). The plaintiff's initial disclosures also stated that "he was entitled to 30% of any cash or other assets that remained at [the company] after the asset sale and to [company] distributions from which he was excluded." *Id.* (cleaned up).

¶53 In response to a motion in limine filed by the defendants, the district court determined that the plaintiff had "not disclose[d] a computation of any damages claimed for purposes of rule 26," and it "prevent[ed] him from presenting damages-related evidence at trial." *Id.* ¶¶ 9, 13 (cleaned up). The plaintiff petitioned for interlocutory review of the district court's decision, and we granted the petition. *Id.* ¶ 12. Reviewing the district court's decision, we determined that "[h]owever vague the [plaintiff's] claims to other funds may have been, [his] disclosure of his claim to 30% of [the company's] purchase price was consistent and straightforward." *Id.* ¶ 21. And we reversed the district court's decision as to that component of the plaintiff's claimed damages. *Id.* ¶ 29.

¶54 In support of our decision, we noted that although the plaintiff did not disclose the price the purchasing entity paid for the company, his "disclosure described the precise components he intended to factor into" that particular part of his damages claim, *id.* ¶ 19, and that part of the damages claim was "readily calculable from the information disclosed," *id.* ¶ 25. Elaborating, we explained,

> [W]hile [the plaintiff] did not know the purchase price was $200,000 when he served his initial disclosures, [the defendants] knew how much [the company] had sold for and could readily calculate this component of [the plaintiff's] damages as 30% of $200,000, or $60,000. Thus, [the plaintiff's] disclosure explaining the process for calculating his claimed portion of [the company's] purchase price satisfied his obligation under rule 26(a)(1)(C) to produce a 'computation of any damages claimed'—at least with regard to that component of his damages claim.

*Id.* ¶ 19.

¶55 We draw two animating principles from *Williams*. First, to the extent that a party adequately discloses a component of its damages claim, it may present evidence of that component, even if the remainder of its damages disclosure fails to comply with rule 26(a)(1)(C). Second, a formula rather than a specific sum may be sufficient to meet a party's disclosure obligation if the claimed damages are readily calculable using the identified formula and the other information disclosed.

¶56 In *Bad Ass Coffee Co. of Hawaii Inc. v. Royal Aloha International LLC*, 2020 UT App 122, 473 P.3d 624, a coffee company and "an international franchise consultancy" formed a new entity—of which they both became part owners—"for the purpose of developing [the coffee company's] international

presence." *Id.* ¶¶ 1–3. The new entity's operating agreement gave the former president and director of the coffee company a 25% interest in the new entity, the coffee company itself a 25% interest in the new entity, and the consultancy a 50% interest in the new entity. *Id.* ¶¶ 2–3. The operating agreement further "provided that [the consultancy's] initial capital contribution would be 'its time for the day-to-day management and the international franchise development,' which had a 'fair market value of approximately $500,000.00.'" *Id.* ¶ 4.

¶57 "The parties' relationship eventually deteriorated, and litigation ensued." *Id.* ¶ 1. That litigation included a claim by the consultancy against the coffee company for breach of the operating agreement. *See id.* ¶ 33. The consultancy alleged that as a result of the breach, it "had lost the value of its capital contribution." *Id.* In its initial disclosures, the consultancy "identified, as an element of its damages, 'Lost capital investment in [the new entity]: $500,000.'" *Id.* The coffee company moved for summary judgment on the consultancy's claim, "arguing that it had failed to . . . provide 'any calculation of damages.'" *Id.* The consultancy "opposed the motion, arguing that the parties contractually agreed to the value of its in-kind contribution at $500,000, that [the consultancy] claimed this amount in its initial disclosures, and that the operating agreement had been produced in discovery and authenticated in depositions." *Id.* (cleaned up). The consultancy pointed out that the parties had "freely contracted for the $500,000 figure" and that because "the value of [the consultancy's] services [was] stipulated to be $500,000, the contract itself [was] adequate evidence of damages." *Id.* (cleaned up). "Accordingly, [the consultancy] contended that it was not required to establish some kind of formal calculation for the stipulated value of its services in the operating agreement because [the coffee company had] already agreed to that amount." *Id.* (cleaned up). The district court agreed with the consultancy and denied the coffee company's motion. *See id.* ¶ 34.

¶58 On appeal, the coffee company argued that the consultancy "failed to comply with rule 26 when it merely disclosed the perfectly round number of $500,000 as damages and did not supplement that disclosure." *Id.* ¶ 35 (cleaned up). Like the district court, we disagreed. *See id.* ¶¶ 36–37. We noted that the consultancy "identified the lost capital contribution consisting of in-kind services as damages in its [pleadings] and in its initial disclosures . . . and it provided the [o]perating [a]greement itself as a basis for damages early in the litigation." *Id.* ¶ 36. We further observed that "the $500,000 damages figure required no computation" because the consultancy's "theory was that the figure represented the entire value of its in-kind contribution to the parties' venture as agreed to by the parties in the [o]perating [a]greement." *Id.* ¶ 37. We reasoned that because the consultancy "purported to seek that full amount as damages for breach of the [o]perating [a]greement, no further disclosure was needed" and, thus, that "the district court did not abuse its discretion by concluding that [the consultancy's] damages disclosures were sufficient under rule 26's damages disclosure requirement." *Id.*

¶59 As relevant here, *Bad Ass Coffee* stands for the principle that when the value of a party's claimed damages—or, by extension, an element of the party's damages calculation—was contractually agreed upon, identification and production of the contract containing that value is sufficient to comply with rule 26(a)(1)(C), at least with regard to that element of the damages calculation.

¶60 Applying these principles from *Williams* and *Bad Ass Coffee*, we conclude that Park Avenue adequately disclosed four components of its claimed damages: (1) Church's unpaid rent for April, May, June, July, and August 2017; (2) Church's unpaid minimum future rent; (3) treble damages based on unpaid rent from May 15, 2017, through June 2, 2017; and (4) the base amount Church still owed under the Forbearance Agreement. To the extent that on remand Park Avenue is otherwise permitted to

pursue these damages theories, it should be allowed to present evidence of the amount of these claimed damages. We address in turn each of these components of Park Avenue's claimed damages.

¶61 **Church's unpaid rent for April, May, June, July, and August 2017:** Although the district court ruled that Park Avenue was generally barred from putting on evidence of its damages, it determined that Park Avenue was not barred from presenting evidence of its claimed damages for unpaid rent for April, May, June, July, and August 2017. To support this ruling, the court explained, "[I]t was readily apparent that [Park Avenue] was claiming unpaid rent for those months, and these amounts are readily ascertainable from the face of the Lease, which was referenced in the initial disclosures." The district court's reasoning fully accords with the principles identified above, and Miller did not appeal the court's decision on this point. Accordingly, on remand, Park Avenue should again be allowed to present evidence of this component of its claimed damages.

¶62 **Church's unpaid minimum future rent:** Just as it was readily apparent that Park Avenue was claiming unpaid rent for April, May, June, July, and August 2017, it was also readily apparent that Park Avenue was seeking future rent. The minimum rent amount ($360,000 annually, or $30,000 monthly) and the term of the Lease were agreed upon in the Lease, which Park Avenue identified and produced as part of its damages disclosure. The formula for calculating future rent is plain—the number of months remaining in the Lease term for which Church did not pay rent times the minimum monthly rent amount—and Park Avenue produced the information needed to employ this formula. Thus, the total amount of unpaid minimum future rent is readily calculable, and the district court exceeded its discretion by not ruling that Park Avenue complied with rule 26(a)(1)(C) as to this component of its claimed damages. On remand, if the district court determines that there was no surrender and

acceptance or that Park Avenue's right to unpaid rent through the end of the Lease period accrued prior to any surrender and acceptance,[2] Park Avenue should be permitted to put on evidence of the amount of its claimed damages for future rent.

¶63 **Treble damages based on unpaid rent from May 15, 2017, through June 2, 2017:** Park Avenue stated in its damages disclosure that it was seeking "statutory damages for unlawful detainer" and that its damages amount "was computed pursuant to" Utah Code section 78B-6-811(3), the unlawful detainer statute's treble damages provision. Park Avenue also identified the particular provision of the Lease—Section 14.03—under which it and Church had agreed that damages for Church's default would include "amounts . . . permitted from time to time by the laws of the State [of Utah]." Further, Park Avenue identified and produced its amended complaint against Church, which specifically alleged that Park Avenue sought "treble damages in accordance with [Utah Code section] 78B-6-811 at the rate of $3,000 for each day [Church] remained in unlawful detainer prior to executing the Forbearance Agreement, beginning on May 15, 2017[,] until June 2, 2017, and for each day [Church] remain[ed] in unlawful detainer, beginning on July 13, 2017." With this information, Park Avenue's claimed treble damages based on unpaid rent for the period Church was in unlawful detainer from May 15, 2017, through June 2, 2017, were

---

2. Park Avenue argued in the district court and asserts again on appeal that even if it accepted a surrender of the Premises in August 2017, "the entire balance of the Lease was already due" based on the provision in the Lease saying that upon Church's default, Park Avenue would "immediately" have the right to recover unpaid rent through "the balance of the Lease [t]erm." We have elected not to address this argument in the first instance, but Park Avenue may raise it again on remand and obtain a ruling from the district court.

readily calculable.[3] Therefore, the district court exceeded its discretion by not ruling that Park Avenue complied with rule 26(a)(1)(C) with respect to this component of its claimed damages. If on remand the district court determines that the Guaranty obligated Miller to pay for treble damages that could have been assessed against Church, Park Avenue should be allowed to present evidence of the amount of such treble damages as are based on unpaid rent from May 15, 2017, through June 2, 2017.

¶64 **The base amount Church still owed under the Forbearance Agreement:** Park Avenue made clear in its damages disclosure that it sought damages "pursuant to the [F]orbearance [A]greement." It identified and produced both the Forbearance Agreement and its amended complaint against Church, the latter of which alleged that $73,354.91 was due under the Forbearance Agreement as of July 3, 2017; that on July 13, 2017, Church made a payment of $33,267.48; that on July 14, 2017, Church made a payment of $4,604.52; and, thus, that "$35,482.91 remain[ed] due and owing" under the Forbearance Agreement. In short, Park Avenue provided a complete and detailed computation—and, accordingly, an adequate disclosure—of this component of its damages claim, and the district court exceeded its discretion by ruling otherwise. On remand, if the court determines that the Guaranty obligates Miller to pay for amounts due to Park Avenue under the Forbearance Agreement,[4] Park Avenue should be

---

3. Any claimed treble rent damages for the period beginning July 13, 2017, were not readily calculable with the information provided since no end date for that period was provided.

4. In Miller's first summary judgment motion, along with the requested rulings already identified, Miller moved for a ruling that as a matter of law he was not liable for amounts Church owed under the Forbearance Agreement. The court denied that portion of Miller's motion, concluding that on this point there remained a genuine issue of material fact. Because the case did not proceed to trial, this issue has not yet been decided.

allowed to present evidence of the base amount Park Avenue still owed under that agreement.

¶65   In sum, we reverse the district court's decision to the extent that it barred Park Avenue from presenting evidence of its claimed damages for unpaid minimum future rent, treble unpaid rent from May 15, 2017, through June 2, 2017, and the base amount Church still owed under the Forbearance Agreement.

C.     The Impact of Park Avenue's Disclosure Deficiency on Its Ability to Present Evidence of Other Amounts Owed by Church

¶66   Lastly, Park Avenue asserts that the district court "incorrectly applied rule 26(a)(1)'s [damages] disclosure requirement not only to Park Avenue's damages claim against Miller, but also to bar Park Avenue from showing the amounts owed by Church in response to Miller's arguments that the payments Park Avenue received from Church had made it whole." Park Avenue appears to concede that under its complaint against Miller, the amounts Miller owed in addition to unpaid rent for April, May, June, July, and August 2017 constituted additional damages regarding which Park Avenue was required to provide an adequate disclosure. But it argues that after the court ruled that Park Avenue could not seek damages in excess of the unpaid rent for those five months of 2017, it was not claiming the other amounts owed by Church as damages and, thus, that it no longer had an obligation to provide a rule 26(a)(1)(C) disclosure as to those amounts. We conclude, however, that because Park Avenue was claiming those amounts as damages when its initial disclosures were due and through much or all of the discovery period, the district court did not abuse its discretion by determining that the other amounts Park Avenue alleged Church owed were subject to the damages disclosure requirement and that failure to meet that requirement was sanctionable.

¶67 Notwithstanding this conclusion, our other rulings change the complexion of this issue on remand. In our other rulings, we have determined that Park Avenue may present evidence of other amounts allegedly owed by Church. Accordingly, on remand, Park Avenue should be permitted to show that it exercised its "sole and absolute discretion" under the Lease to apply payments made by Church while it was in default to other "outstanding arrearages owed by" Church, so long as those other outstanding arrearages are proved by evidence that is admissible under our opinion here.

CONCLUSION

¶68 There remains a genuine dispute of material fact regarding whether Church surrendered the Premises and Park Avenue accepted a surrender. We therefore reverse the district court's grant of summary judgment on this issue. There also remains a genuine dispute of material fact as to whether the Guaranty obligates Miller to pay Park Avenue for treble damages that could have been assessed against Church. Accordingly, we reverse the court's grant of summary judgment on this issue as well.

¶69 As to Park Avenue's damages disclosure, we affirm the court's determination that Park Avenue's overall disclosure was inadequate. But we conclude that Park Avenue adequately disclosed the four specific components of its claimed damages identified herein and that the district court exceeded its discretion to the extent that it determined otherwise. We therefore reverse in part the district court's summary judgment ruling related to Park Avenue's damages disclosure. On remand, if the court determines that Park Avenue's theories for pursuing these components of its claimed damages are otherwise viable, Park Avenue should be allowed to present evidence of the amount of these damages.

¶70 Finally, we affirm the district court's determination against the backdrop of its other rulings that Park Avenue's failure at the

time of disclosure to provide an adequate computation of certain of its claimed damages that were based on additional amounts owed by Church was sanctionable even after Park Avenue could no longer claim those amounts directly as damages. But because our other rulings alter the backdrop against which that determination was made, we ultimately reverse the district court's final summary judgment ruling and dismissal of Park Avenue's action. On remand Park Avenue should be allowed to show that it exercised its discretion under the Lease to apply payments made by Church while it was in default "to any outstanding arrearages owed by" Church, so long as those outstanding arrearages are proved by admissible evidence.

¶71    In short, we affirm in part, reverse in part, and remand this case for further proceedings consistent with this opinion.[5]

––––––––––

5. Relying on the principle that this court ordinarily "award[s] appellate attorney fees and costs when a party was awarded fees and costs below and then prevails on appeal," *Cougar Canyon Loan, LLC v. Cyprus Fund, LLC*, 2019 UT App 47, ¶ 15 n.11, 440 P.3d 884 (cleaned up), Miller asks for an award of his appellate attorney fees and costs. Based on the district court's rulings, Miller certainly prevailed there. "But we have determined that the district court's ruling[s] [were] in several respects erroneous, and [we] therefore deem it necessary to vacate that court's 'prevailing party' determination as well as its award of attorney fees to [Miller]." *Vanderwood v. Woodward*, 2019 UT App 140, ¶ 49, 449 P.3d 983. "At the conclusion of the proceedings on remand, the district court should reassess the 'prevailing party' issue and award attorney fees as appropriate at that time." *Id.*